UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KWOK FUNG CHEUNG,                )
                                 )
        Petitioner,               )       Case No. 1:08-cv-1049
                                 )
v.                               )       Honorable Paul L. Maloney
                                 )
MICHAEL B. MUKASEY, et al.,      )
                                 )       **REPORT AND RECOMMENDATION**
        Respondents.             )
_____)

      This is a habeas corpus proceeding brought by a federal detainee pursuant to 28 U.S.C. § 2241, challenging his continued detention by the United States Bureau of Immigration and Customs Enforcement (ICE). The *pro se* petition recites that petitioner is currently detained at the Calhoun County Jail, within this district, having been arrested on November 10, 2007. His petition was filed exactly one year thereafter, on November 10, 2008, asserting that petitioner's continued detention violates 8 U.S.C. § 1231(a)(6), as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Respondent has filed an answer, supported by the affidavits of Deportation Officer Kenneth Alvedy and Detention and Deportation Officer Cynthia Kohlmeier-Parker. This matter has been referred to me for issuance of a report and recommendation pursuant to Rule 10 of the Rules Governing Section 2254 Proceedings in the District Courts[1] and 28 U.S.C. § 636(b)(1)(B). After reviewing the record, I conclude that petitioner has failed to meet his burden to show that there

---

[1] The district court has discretion to apply the section 2254 rules in other habeas corpus cases, such as those brought under section 2241. *See* Rule 1(b), RULES GOVERNING SECTION 2254 CASES.

is no significant likelihood of removal within the reasonably foreseeable future. I therefore recommend that his habeas corpus action be denied.

**Proposed Findings of Fact**

Petitioner, Kwok Fung Cheung, is a native and citizen of the Peoples Republic of China. He first entered the United States on May 12, 2000. He applied for asylum, but on March 29, 2001, his application for asylum was denied, and an immigration judge ordered his removal. The Board of Immigration Appeals dismissed his appeal from this order on January 15, 2003, and denied a motion to reopen the appeal on June 20, 2003. (Petition, docket # 1, at 8).

Petitioner was released on bond on August 30, 2004, but failed to surrender as required and was taken into custody. He was released pursuant to an order of supervision in late 2005, but thereafter violated the supervision order and became a fugitive. Petitioner was arrested on November 11, 2007, and has remained in custody ever since. (Kohlmeier-Parker Aff., ¶ 4). He is lodged in the Calhoun County Jail in Battle Creek, Michigan.

Petitioner received an interview on April 4, 2008, from the Detroit Office of Detention and Removal Operations. Officials of the ICE office in Detroit requested from ICE headquarters in Washington the issuance of a travel document suitable for petitioner's entry into China, to facilitate the removal. (Letter of 4/5/08, Resp. Ex. 2, docket # 5). Three days thereafter, the Acting Deputy Field Office Director of ICE delivered to petitioner a notice that the agency had decided to continue his detention, pending removal from the United States. (Resp. Ex. 3). Later that month, on April 28, 2008, ICE sent petitioner's identity tag to the Chinese consulate to facilitate the issuance of a travel authorization by Chinese officials. On May 20, 2008, the Washington office of

ICE again reviewed petitioner's detention status. Petitioner was given a notice (Resp. Ex. 4) informing him of the agency's decision to continue detention, stating that ICE expected that a travel document would be issued by Chinese authorities "in the reasonably foreseeable future," thereby allowing removal.

According to the Kohlmeier-Parker affidavit (¶ 6), petitioner submitted the required application forms and other documentation to ICE, for submission to the Chinese consulate, on August 9, 2008. On November 8, 2008, Deportation Officer Kenneth Alvedy contacted the Chinese consulate to inquire about the status of petitioner's travel permit. He was unable to receive an answer at that time. (Alvedy Aff., ¶ 3). The ICE is concerned that a discrepancy in the spelling of petitioner's name as found on his birth and marriage certificates and his name as reflected in immigration documents may be contributing to the delay. (*Id.*, ¶ 5). Ms. Kohlmeier-Parker, who specializes in working with foreign embassies in an effort to obtain travel documents, avers that the Chinese authorities have given no indication that they are not going to issue appropriate paperwork and that the Chinese consulate has regularly issued travel documents in the past. (Kohlmeier-Parker Aff., ¶¶ 2, 6, 8). She believes that appropriate documents will be issued by the Chinese consulate in the near future and, once this documentation is issued, "there are no impediments to effectuate removal to China." (*Id.*, ¶ 10).

The Washington office of ICE most recently decided to continue petitioner's detention on December 9, 2008. The notice delivered to petitioner informed him as follows:

> A request for a travel document was submitted on your behalf to the Consulate of China in Chicago, Illinois. The Consulate of China has not denied issuing you a travel document and the request is still pending. Your removal to China is expected to occur in the reasonably foreseeable future; therefore you are to remain in ICE custody at this time.

(Resp. Ex. 6).

Although the court's order of December 29, 2008 (docket # 7), specifically advised petitioner of his right to file a submission to this court no later than January 16, 2009, petitioner has failed to do so. Consequently, there is nothing before the court to indicate that ICE is not proceeding in good faith, that the Chinese consulate is not likely to issue travel authorization, or that there are other grounds to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

## Discussion

Petitioner seeks relief under 28 U.S.C. § 2241, which authorizes federal district courts to grant writs of habeas corpus to prisoners "in custody." Despite statutory restriction of court review regarding many immigration matters, a petition for writ of habeas corpus under section 2241 is appropriate for raising statutory and constitutional challenges to post-removal detention by the ICE. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *Ly v. Hansen*, 351 F.3d 263, 266 (6th Cir. 2003).

The detention of aliens is governed by statute. When immigration authorities issued a final order of removal, petitioner was subject to a mandatory 90-day detention period pursuant to section 241(a) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1231(a). After expiration of that period, section 241(a)(6) of the INA gives the Attorney General discretion to continue an alien in detention:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title, or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In *Zadvydas v. Davis*, the Supreme Court was asked to declare section 241(a)(6) unconstitutional, because it authorized unlimited detentions, in violation of the Due Process Clause. To avoid this constitutional question, the Court construed the statute as authorizing detention only for that period of time reasonably necessary to remove the alien, presumptively six months. 533 U.S. at 701. Thus, the Act as construed in *Zadvydas* does not permit indefinite detention, which implicates due-process concerns under the Fifth Amendment. *See Ly*, 351 F.3d at 267.

The *Zadvydas* Court outlined the essential inquiry for a habeas court faced with administrative detention beyond the presumptive six-month limit:

> In answering that basic question, the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon violation of those conditions.

*Zadvydas*, 533 U.S. at 699-700. "[W]here detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed." *Id.* at 690. Under *Zadvydas*, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* at 701. Petitioner has the burden of providing a good reason to believe that no such likelihood exists. Once petitioner has met this burden, the government must respond with evidence sufficient to rebut that showing. *Id.* at 701.

In the present case, petitioner has not provided any evidence to give this court "good reason to believe" that his removal is unlikely in the reasonably foreseeable future. According to the affidavits presented by respondent, petitioner has provided the appropriate documentation to the Chinese consulate which, in the experience of ICE officers, should be sufficient to induce the consulate to issue travel documentation. The Chinese consulate has not denied the request, nor is there any reason to believe that it will do so. Issuance of the appropriate travel documentation by the Chinese consulate is the only impediment standing in the way of removal.

It is significant that, unlike the circumstance faced by the Court in *Zadvydas*, there is no institutional barrier to removal. *Zadvydas* involved two aliens with criminal records, who faced "potentially permanent" civil confinement. 533 U.S. at 684-86. Because of his criminal record, Mr. Zadvydas was denied entry by both Germany and Lithuania, the two countries with which he had prior contacts. Plaintiff Ma had no reasonable prospect of being repatriated to his native Cambodia, given the lack of a repatriation agreement between that country and the United States. *Id.* at 685-86. By contrast, the ICE officials responsible for this case see no impediment to petitioner's repatriation and expect, on the basis of their previous dealings with the Chinese consulate, that a travel authorization will be forthcoming in the near future. Mere delay by the foreign consulate in issuing travel documents, despite reasonable efforts by United States authorities to secure them, does not satisfy a detainee's burden under *Zadvydas* to provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *See Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002); *Kahn v. Fasano*, 194 F. Supp. 2d 1134, 1137-38 (S.D. Cal. 2001).

On the record now before the court, petitioner has not met his burden of showing that there is no significant likelihood of removal within the reasonably foreseeable future. He is therefore not entitled to habeas corpus relief.

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied, without prejudice to petitioner's ability to apply for future relief if circumstances change.


Dated:  March 10, 2009                     /s/  Joseph G. Scoville
                                           United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).